J.  F.  McMurray,  Appellant,  v.  D.  L.  Hughes, Appellee.

82  47<br>118 562

1. **Sale: APPARENT OWNER: INNOCENT PURCHASER: ESTOPPEL.** A racehorse was purchased jointly by M. and H., at Lexington, Kentucky, but a bill of sale therefor was executed to H. alone as vendee, and the evidence tended to show that it was the intention of M. at the time to keep his interest in the horse a secret. Subsequently, the horse was sent to Gainesville, Texas, where both M. and H. resided, and was there kept in a barn at the racetrack, where H., who was a "driver and campaigner of horses," took charge of the horse, and paid the expenses incident to feeding, caring for and training him. M. frequently visited the barn, but, while showing much interest in the horse, did not disclose his ownership, and the "rubber" in charge did not know of it. Afterwards H. took the horse, with the consent of M., to Keokuk, Iowa, where he sold him to the defendant. The latter did not see the bill of sale received by H. at Lexington, it having been lost, but was informed by another at Keokuk that it had been seen by him. Before leaving Gainesville H. had made a bill of sale to M., but this had not been acknowledged and recorded, and the defendant had no actual notice of the interest of M. in the property. *Held,* that M. was estopped by his conduct from asserting any title to the horse as against the defendant.

2. **Practice in Supreme Court: FINDINGS OF FACT: ERROR.** A cause tried to the court will not be reversed upon appeal because some of the findings of the court are not supported by the evidence, where such findings are immaterial, and the material facts found sustain the judgment rendered.

*Appeal from Lee District Court.*—HON. J. M. CASEY, Judge.

FRIDAY, JANUARY 30, 1891.

THIS is an action to recover the possession of specific personal property. There was a trial by the court, which resulted in a judgment in favor of the defendant for the property and costs. The plaintiff appeals. *Affirmed.*

*W. J. Roberts*, for appellant.

*James C. Davis*, for appellee.

Robinson, J.—On the twenty-third day of November, 1887, the plaintiff filed in the court below a petition in which he alleged that he was the absolute and unqualified owner of a certain pacing racehorse, known as "Richball, and of harness and robe used with him, and that he acquired such ownership by purchase from one T. C. Halsell on the fourteenth day of March, 1887. On the twenty-fifth day of October, 1888, the plaintiff filed an amended and substituted petition, in which he alleged that he was the absolute and unqualified owner of the horse, and that he acquired such ownership by purchase from one J. P. Hird. The answer of defendant denies the allegations of the petition, and alleges that the defendant is the absolute and unqualified owner of the horse; that he purchased him for a valuable consideration of T. C. Halsell, without knowledge or notice of the claim of plaintiff; that plaintiff by his acts placed it within the power of Halsell to deceive and defraud the defendant; that he remained silent, and permitted the superior court, in the case of Hughes *v.* Halsell, to adjudicate the title of defendant; and that by reason of these facts he is estopped from setting up any claim or title adverse to that of defendant. The court made a special finding of numerous facts, which, in effect, determined that the estoppel pleaded was sustained.

I. In December, 1886, the plaintiff and Halsell resided in Gainesville, Texas. The plaintiff was superintendent of the public schools of Gainesville, and Halsell was what is styled by plaintiff a "driver and campaigner of racehorses." It seemed to be the business of Halsell to train racehorses, and to travel about the country during the racing season with racehorses, which he entered in races for the money where there was a chance to win. In

1. Sale: apparent owner: innocent purchaser: estoppel.

December, 1886, the horse Richball was in Lexington, Kentucky, but was owned by a resident of Gainesville, named J. P. Hird. At that time Halsell asked plaintiff to buy the horse, but he refused to pay the price, twelve hundred dollars, demanded. It was finally agreed between the two that the plaintiff should give one thousand dollars for the horse, and that Halsell should pay the remainder, and have the privilege of handling the horse. The plaintiff advanced one hundred dollars to secure the sale. Halsell went to Kentucky for the horse, and, on his return with him, the plaintiff paid nine hundred dollars more, and Halsell gave a note, signed by himself and another, for the remaining two hundred dollars. In March, 1887, Halsell left Texas to campaign in Kansas and Illinois. In August of that year he had the horse at the Keokuk fair, and about that time pledged the horse to one Bullard, to secure a loan of two hundred and thirty dollars. On the first day of September, 1887, Halsell sold the horse to defendant for the sum of five hundred dollars, agreeing to satisfy the Bullard claim, and reserving the right to repay the purchase price on the first day of April, 1888, and take the horse. On the twelfth day of September, 1887, the defendant commenced an action in the superior court of the city of Keokuk, against Halsell and Bullard, for a specific performance of the contract of sale. Bullard appeared, and filed answer, and on the eighteenth day of October, 1887, a decree was rendered which recited that Hughes had paid into court two hundred and thirty dollars for Bullard, and awarded the possession and ownership of the horse to Hughes. On November 28, 1887, Halsell filed an answer, in which he denied liability. On the first day of December, 1887, judgment was rendered against Halsell for damages, for failure to perform his agreement, in the sum of ninety-seven dollars.

The district court found that, as between plaintiff and Halsell, the horse was purchased for the plaintiff. The appellant contends that, the court having found

that plaintiff purchased the horse of Hird, and not of Halsell, there is no evidence to justify the finding of an estoppel.

It appears that the negotiations with Hird were carried on by Halsell. He made the first payment of one hundred dollars. He brought the horse from Kentucky, and placed him in a livery barn in Gainesville for a short time. He was then taken to the racetrack, and kept in a stable there which had been owned by Halsell. The plaintiff and Halsell were both present with Hird when the sale was closed, but the plaintiff did not disclose his interest in the horse, although it was known that he advanced some of the purchase price. Hird supposed that some one besides Halsell was the actual owner of the horse, although he executed to him the written transfer or bill of sale required in such cases by the statutes of Texas. The plaintiff claims to have purchased the stalls at the racetrack, in which the horse was kept, of Halsell; but the latter took charge of the horse, had him cared for by a man in his employ, and paid the expenses incident to feeding, caring for and training him. The plaintiff visited the barn while he was kept at the racetrack frequently, and showed much interest in him, but did not disclose his ownership. The "rubber" in charge of the horse did not know of his claim. When Halsell was about to start on his northern tour, in March, 1887, he gave to the plaintiff an instrument in writing of which the following is a copy:

"Gainesville, Texas, March 14, 1887.

"For valuable consideration, I have this day bargained, sold and delivered, unto J. F. McMurray, one dark bay, white-faced racing horse, known as 'Richball,' the title to which I will forever warrant and defend.                    T. C. Halsell."

The plaintiff states that he did not think the instrument was necessary, but took it as a precaution against accident, that he might have evidence of his ownership. The plaintiff never saw the horse after he was taken from Gainesville in the spring of 1887, nor did he see

Halsell until the latter part of the next autumn.  He went to Chicago early in July of that year, expecting as he says to meet Halsell there ; but he did not find him, although he consulted a weekly paper called the "Horseman," in which frequent mention was made at about that time of entries of "Richball" for races at different places in Illinois.  When defendant purchased the horse he had no notice of the claims of the plaintiff. Halsell represented that he had purchased the horse of Hird, and, in answer to inquiries of the defendant, stated that he had a bill of sale for the horse from Hird, but on looking for it could not find it.  It was shown that it was found on the fair-grounds at Keokuk, and inspected by a witness named Daniel, but again lost.

It is contended with much earnestness on behalf of appellant that the relations between himself and Halsell at Gainesville, and his conduct towards the horse, cannot be considered to establish an estoppel, for the reason that the defendant knew nothing of them, and did not rely upon them when he purchased the horse. It is also claimed that appellant did not know until the bill of sale was given to him by Halsell, that the latter had taken a bill of sale in his own name, and that at that time the bill of sale to him was surrendered to the plaintiff, and was, in some manner to him unknown, wrongfully obtained and carried away by Halsell.  If all that is claimed for the plaintiff in regard to the bills of sale be true, it is manifest that he was guilty of negligence in permitting Halsell to take a bill of sale in his own name ; and, when the fact that he had so taken it was discovered, in not securing it, and thus preventing its use.   There is some evidence, however, to sustain the finding of the district court, to the effect that it was the intent of the plaintiff when the horse was purchased to keep secret his ownership.  We must assume that the plaintiff knew that the law of Texas required a written transfer of the horse from Hird to the purchaser when the sale was made, and we think he must be held to know that a bill of sale was in fact given to Halsell as the

purchaser. That being true, the transaction as to third parties, having no notice of the interest of plaintiff, was a sale to Halsell. As the plaintiff never had actual possession of the horse to protect himself against the unauthorized acts of Halsell, he should have caused the bill of sale to himself to be acknowledged and recorded. But that he failed to do. It is true, as claimed by appellant, that defendant never saw the bill of sale from Hird to Halsell, but he was told that it had been given, and, in effect, that it had been brought to Keokuk; all of which was true, and no doubt relied upon by defendant. In view of these facts it was not essential that he should see the instrument in order to rely upon it. The plaintiff, having permitted Halsell to have the exclusive possession and control of the horse, with the apparent right to sell or otherwise dispose of him, was rightly held by the district court to be estopped from now asserting a title adverse to defendant.

II. Appellant insists that the finding of the district court as to several alleged facts is without support in the evidence. We think that is true to some extent, as for example, that "the undisputed evidence is that Halsell was financially insolvent, and very intemperate in his habits." But we do not think the finding as to such facts was at all material to a determination of the case, and that the result would have been the same, from the material facts correctly found, whatever the finding might have been as to other facts. The conclusions we have announced dispose of the controlling questions in the case.

**2. PRACTICE in supreme court: findings of fact: error.**

The judgment of the district court is AFFIRMED.