## STATE OF IOWA v. L. R. VAN TASSEL, Appellant.

**Murder by Poison:** VERDICT SUSTAINED. Defendant's wife was killed by strychnine, administered at different times. Defendant purchased and had in his possession large quantities of such drug at or about the time of her death; and, while she was suffering from its effects, he denied that he had any poison, and after her death, denied that he had purchased any before she died. Evidence given by him at a coroner's inquest on her body, and that given by him on the trial, was contradictory. He had substituted some other drug for medicine left for his wife by a physician; soon after her death he removed something from some of the furniture in her room, and he objected to an inquest on the body. He showed no signs of grief at her death, he was in love with her sister, and proposed marriage to her soon after the death. There was evidence that the wife committed suicide, but, on the whole, it showed that she had no desire to take her own life. *Held*, that the evidence supported a verdict of guilty.

**Evidence:** COMPARISON OF WRITINGS. Where a paper that has written on it the name of a particular person, is not itself admitted in evidence, it cannot properly be used as the basis of a comparison of hand writing, for the purpose of showing whether a certain signature is such person's.

IDENTIFICATION: *Sufficiency.* The evidence fully identified and accounted for certain organs from the time they were taken from deceased's body until they reached H, a toxicologist in Chicago, except for an hour or so, when they were left sealed in the office of the doctor that removed them from deceased's body, and while they were in transit by express to Chicago. Said doctor, during such hour or so, left them in a commode in his office, the door of which was locked, while he was gone, and no one was in the room. The city marshal assisted the doctor in packing the jars containing the organs, and as soon as they were packed, the marshal took the box and delivered it to the express agent, who held it in his possession, and had it under his immediate supervision, until it was shipped to Chicago, where H. received the box in the apparent condition in which it was when shipped, and analyzed the contents of the jars. *Held*, that there was sufficient identification of deceased's organs to justify the admission of H's evidence of his analysis thereof, and its results, and this, though there was some conflict as to the number of jars sent and received.

EVIDENCE OF INSANITY: *Relevancy and competency.* It was not error to exclude, as immaterial and incompetent, evidence of insanity of defendant's uncle, where there was no other evidence tending to show that defendant was insane, and the particular form of his uncle's insanity was not shown.

ADMISSIBILITY: *Voluntary testimony at inquest.* Where defendant appeared voluntarily, and gave his evidence, at an inquest held on the body of his wife, such evidence was admissible on his trial for her murder, for the purpose of impeaching him, and as substantive evidence. *State v. Clifford,* 86 Iowa, 550, *distinguished.*

SAME. Letters signed by defendant, charged with murdering his wife, taken from a bureau not under lock and key, which the defendant had moved to the home of his wife's parents and directed his mother-in-law to give to his child, and a bond found in the house of his father-in-law, and not taken from a locked drawer, are admissible as a standard of comparison for the purpose of determining the genuineness of his signature to an alleged confession, notwithstanding an objection that they were taken surreptitiously and that he is thus compelled to give evidence against himself. *Boyd v. United States,* 116 U. S. 616, *distinguished.*

EXPERTS. The court may properly instruct the jury that expert testimony as to handwriting is far from satisfactory, and should be received with great care and caution.

CONFESSION TO DETECTIVE. Where one of the main witnesses for the state was a hired detective, it was not error to refuse to charge that, if he employed falsehood, artifice and fraud in trying to obtain an alleged confession, it very seriously affected his credibility as to whether such confession was obtained, and, instead, to charge that the jury had a right to consider the means employed by such detective to elicit statements from defendant, whether or not he used deception and falsehood to induce defendant to make them, as well as many other things enumerated in the instruction, in determining the weight to be given to his evidence; and that the jury had a right to know just what arts were employed, and all the circumstances under which the confession was made, and in the light of these circumstances, and in connection with defendant's evidence, to determine the facts in regard to the purported confession.

Confession. Where one makes a confession of murder in the belief that he thus proves his capacity to commit crime and to become an accomplice in future crimes, the confession is voluntary.

Indictment: POISONING. Under Code of 1873, section 3849, murder by poison is murder in the first degree, hence such murder need not be charged to have been committed "unlawfully, feloniously, deliberately, and premeditatedly,"

SAME. If such charge were necessary, an indictment which says that defendant by giving poison "did wilfully, feloniously, deliberately, unlawfully and of his malice aforethought kill," is sufficient.

**Instructions:** HARMLESS ERROR. An instruction in a trial for murder by poisoning, that if the defendant administered the poison to his wife, and she partook of the same and died from the effects thereof, all the elements of murder in the first degree are proven, is not cause for reversal, notwithstanding that, under it, defendant might be convicted if he gave the poison as medicine or for the good of deceased, where there is not a scintilla of evidence tending to show that he administered the poison with such intent.

INSTRUCTIONS CONSTRUED TOGETHER. The court charged that "you have heard the testimony as to the autopsy held on (deceased's) body, and the removal of certain organs therefrom, and touching the chemical analysis by H, and the result of such chemical analysis as to finding strychnine in said organs, and the quantity there found;" that medical experts had been permitted to give their opinions, based in part on the result of such analysis, and their opinions were proper to be considered; that the opinions were based on the assumption that the facts recited in the hypothetical questions were true; that whether or not the conditions so stated were true was for the jury to determine; that they should give careful consideration to all the evidence bearing on all the facts involved in the hypothetical questions, and to the opinions of witnesses founded thereon, and that it was for them to decide whether the death was caused by poisoning. *Held*, that the objection that the quoted part of the instructions assumed the existence of certain facts with reference to such analysis, was not valid when all the instructions were considered together.

SAME. On an issue whether defendant's wife was murdered or committed suicide, the court directed the jury to carefully consider her health, mental traits, and condition prior to her death, and that such evidence should not be permitted to obscure the "well-proven facts," nor lead them to indulge in fanciful suppositions. *Held*, that the instruction was not open to the objection that it clearly intimated that all the state's evidence consisted of well-proven facts, when considered in connection with instructions relating to reasonable doubt and to what the state must prove in order to convict.

SAME: *Reasonable doubt.* An instruction that to authorize a conviction, the minds of the jury must be brought to an abiding conviction beyond a reasonable doubt of the defendant's guilt after a full consideration of the whole case, is not erroneous because it fails to use the words "to a moral certainty," as, "abiding conviction beyond a reasonable doubt" is equivalent to that.

DEGREES: *Instruction on.* Where the evidence conclusively shows that deceased's death was caused by poison, and there is no evidence that it was negligently administered, so that defendant is either guilty of murder in the first degree or not guilty, it is not error to submit to the jury the first degree, only.

Appeal: OBJECTION BELOW. Where the state in proving the genuiness of a signature, asserted to be defendant's, is permitted to use a paper on which defendant's name is written, as a basis of comparison of handwriting, and defendant objects merely to the competency of the expert testifying, he cannot, on appeal, object because the court permitted experts to use such paper, without sufficient proof that the standard used was authentic.

*Appeal from Chickasaw District Court.*—HON. L. E. FELLOWS, Judge.

THURSDAY, OCTOBER 7, 1897.

THE defendant was indicted, tried and convicted of the crime of murder of his wife, by administering to her a lethal dose or doses of strychnine. He was sentenced to life imprisonment, and from the judgment of the court, appeals.—*Affirmed.*

*J. R. Bane* for appellant.

*Milton Remley,* attorney general, and *T. C. Clary,* county attorney, for the state.

DEEMER, J.—The record is very voluminous, consisting of more than five hundred closely typewritten pages. A large number of errors are assigned, and we have examined the whole record with the care the importance of the case seems to demand.

I. The indictment is questioned. It is said that it does not allege that defendant did feloniously, wilfully, deliberately, premeditatedly, and of his malice aforethought, poison, kill, and murder his wife.

The indictment charges, "that defendant did feloniously, wilfully, unlawfully, premeditatedly, and

of his malice aforethought, contriving and intending one Ora Van Tassel, with poison, feloniously, wilfully, unlawfully, and with his malice aforethought, to kill and murder, * * * did privately and secretly mix with food, water, and some other substance * * * strychnine; * * * and the said Ora Van Tassel did take, drink, swallow, the said water, food, and other substance with which the strychnine was mixed, * * * by means whereof * * * the said Ora Van Tassel * * * died. * * * And so the jurors * * * say that * * * the defendant * * * in manner and form aforesaid, * * * the said Ora Van Tassel, unlawfully, feloniously, wilfully, and deliberately, premeditatedly, and of his malice aforethought, did poison, kill, and murder. * * *" In another count of the indictment it is charged, "that * * * the defendant, on account of the giving and administering of said poison * * * to the said Ora Van Tassel, did wilfully, feloniously, premeditatedly, deliberately, unlawfully, and of his malice aforethought, kill and murder the said Ora Van Tassel. * * *" Under our statute (Code 1873, section 3849), "all murder which is perpetrated by means of poison * * * is murder in the first degree. * * *" The unlawful administering of poison with bad motive or intent constitutes murder under this statute, if death ensues, and it is immaterial whether or not there is a specific intent to kill. *State v. Wells,* 61 Iowa, 629. It is unnecessary, then, to charge that the defendant did unlawfully, feloniously, deliberately, and premeditately kill and murder his wife; but, if such an allegation were necessary, we think it is sufficiently charged in the second count of the indictment, if not in the first. *State v. Shelton,* 64 Iowa, 333; *State v. Perigo,* 70 Iowa, 657,

II. The defendant's father testified to the insanity of a brother, an uncle of the defendant. At the conclusion of defendant's evidence, the state moved to strike this testimony as immaterial and incompetent, for the reason that there was no evidence that defendant himself was insane, or showed any symptoms of insanity, at the time the poison is said to have been administered. This motion was sustained. Defendant also asked an instruction relating to insanity as a defense. This instruction was refused. Of these rulings complaint is made. We do not find any evidence, aside from that above quoted, which tended to show that defendant was insane. On the contrary, the record shows him possessed of more than the ordinary grade of intelligence. The particular form of insanity with which the uncle is afflicted was not shown, and there is no evidence aside from this isolated fact, tending to show that defendant was not in his right mind. Was this single circumstance admissible in evidence, and did it call for an instruction with reference to insanity as a defense? When there is evidence of a want of motive or other evidence furnishing a basis for inquiry as to the insanity of the accused at the time of committing the criminal act, evidence of hereditary insanity may be introduced. But mere proof of insanity in a parent will not be sufficient to constitute a defense if the other evidence negatives the presence of insanity in the accused. *Lovegrove v. State,* 31 Tex. Cr. R. 491 (27 S. W. Rep. 191). Proof of hereditary insanity is admitted as cumulative evidence, and insanity of ancestors is of itself no defense. 1 Wharton & S. Medical Jurisprudence, section 377; *Laros v. Commonwealth,* 84 Pa. St. 200; *Snow v. Benton,* 28 Ill. 306; *Sawyer v. State,* 35 Ind. 80. The reason for this, undoubtedly, is that the burden is upon defendant to establish this defense by a preponderance of the

evidence. *State v. Felter*, 32 Iowa, 49. And proof of an isolated case of insanity in the family, especially that of a remote relative, will not of itself overcome the presumption of sanity. The instruction asked was faulty, in that it did not apply the right test by which to determine the mental responsibility of the defendant.

III. The defendant's name appeared upon the register of the Arlington Hotel at New Hampton, and the state was permitted to use this as a basis for comparison by its witnesses in proving the genuineness of a signature attached to a confession purporting to be signed by the defendant. It is said that the signature appearing upon the hotel register was denied by defendant, and that there was no proof that defendant signed the name appearing thereon.

The objection now made is that it was error to permit expert witnesses to use this as a basis for comparison. No such objection was made upon the trial. The objection then made was to the competency of the expert, and not to the competency of his testimony. As defendant was then content with the identification of his signature appearing upon the register, he cannot now be heard to complain. The exhibit itself was not admitted in evidence, and could not properly have been used as a basis for comparison had timely objection been made. As it was not made, there was no error. *State v. Cater*, 100 Iowa, 501.

IV. At the conclusion of the evidence, defendant's counsel moved to strike out all the evidence of Dr. J. B. Horton, as to an autopsy held upon the body of Ora Van Tassel, the woman who it is claimed was murdered, and as to the examination and identification of certain organs of her body, because it was immaterial, irrelevant, and incompetent. The exact ground does not appear from the objection itself, and, upon turning to the argument, we find but little said in

support of the objection.  Evidence was introduced without objection showing that an autopsy was held; that the stomach, a part of the liver and spleen, one kidney, and part of the intestines, were removed from the body of the deceased, and placed in fruit jars or cases by Dr. Horton, preparatory to being sent to Chicago for chemical analysis.  That such evidence was legitimate is plain.

Defendant also moved to strike the evidence of Dr. Haines, the toxicologist, who examined what were thought to be the organs taken from the body of Mrs. Van Tassel, on the ground that the said organs were not sufficiently identified.  It is claimed in argument that the identification must be complete; that the evidence must establish their identity to a moral certainty and beyond all reasonable doubt. This objection was not urged to the evidence when given, but was by motion made at the close of the introduction of the evidence; and it is questionable whether it was made in time.  As said by Judge Dillon, in the case of *State v. Moore*, 25 Iowa, 138:  "In a case of this kind, the party cannot sit silent and wait until the evidence is in, willing to take the benefit of it if it shall chance to be for him, and insist as a matter of right to exclude it if it be against him."  Without reference to this rule, however, we do not think the court was in error in denying the motion.  The evidence fully identifies and accounts for the whereabouts of these organs from the time they were taken from the body of the deceased until they reached Dr. Haines, except for the space of an hour or so, when they were left sealed in the office of Dr. Horton, while he went to dinner, and while they were in transit by the express company from Nashua to the city of Chicago.  If they were properly delivered to the express company for shipment to Dr. Haines, in Chicago, as the evidence

shows they were, this is sufficient to cover the period of time necessary to their shipment. When Dr. Horton went to his dinner he left the jars containing the organs he had removed from the body, in his office, but he says that they were locked up in a commode, and that he also locked the office door when he was away, and that no one was in the room while he was gone. The city marshal assisted Dr. Horton in packing the jars containing the organs taken from the body of the deceased, and, as soon as they were packed, the marshal took the box and delivered it to the assistant express agent, who held it in his possession and had it under his immediate supervision, until it was shipped to Chicago. Dr. Haines received the box in the apparent condition in which it was when shipped, and analyzed the contents of the jars. Surely, this was a sufficient identification to justify the admission of Dr. Haines' evidence. There is some little conflict as to the number of jars sent and received, but this is not of itself sufficient reason for rejecting the evidence.

V. It is said that the court erred in admitting in evidence certain letters, papers, and documents surreptitiously taken from the premises and possession of defendant without his consent, thus compelling him to give evidence against himself. The condition of the record makes it difficult to say what foundation there is for this claim. We find that, when defendant was being cross-examined, he was called upon to identify his signature to a bond, to certain letters signed by himself, and in a memorandum book of the Capital Insurance Company. The signature in the memorandum book was not sufficiently identified, and it was not offered or used in evidence. The signatures to the bond and letters were admitted by the defendant to be genuine, but, when they were offered, defendant's counsel objected, on the ground that the papers were taken from him surreptitiously

and without his consent, and that their introduction was equivalent to compelling him to give evidence against himself. In support of the objection, the defendant testified that he left the bond in a secretary at his father-in-law's house, in a box, with some other private papers, and that he gave no one permission to take it; that the letters were locked in the small drawer of a bureau left at his residence; and that the bureau was his property; and that he gave no one permission to take the letters. The evidence adduced by the state, however, tends to show that none of these papers were under lock and key, and, further, that the defendant moved the bureau, with its contents, to the home of his wife's parents, about two weeks after her death, and directed the mother-in-law to give it to his little child. The letters were taken from one of the unlocked drawers of this dresser. The bond was found in the house of defendant's father-in-law, and was not taken from a locked box. The papers were not taken surreptitiously, nor was the defendant compelled to give evidence against himself. See *The Anarchists' Case*, 122 Ill. Sup. 1 (12 N. E. Rep. 977). The state produced the letters and bond, and the defendant was properly called upon in cross-examination to identify his signature. The case is very different in its facts from *Boyd v. U. S.*, 116 U. S. 616 (6 Sup. Ct. Rep. 524).

VI. Defendant was a witness at an inquest, held upon the dead body of his wife. He appeared and voluntarily gave his evidence. This evidence, so given, was used against him, not only for impeaching purposes, but to a certain extent as substantive evidence. Complaint is now made to the introduction of the evidence. Its admissibility seems to be sustained by the authorities. *State v. Carroll*, 85 Iowa, 1; Wharton, Criminal Evidence,

section 664; *State v. Briggs*, 68 Iowa, 424. The case differs essentially from *State v. Clifford*, 86 Iowa, 550.

These are the most important questions which arose during the trial over the reception and rejection of evidence. We have carefully considered all the objections made, however, and, without further extending this opinion, it is sufficient to say we discover no error.

VII. A vigorous assault is made upon the instructions. The court submitted but the one degree of homicide to the jury. This was right, for the evidence conclusively established the fact that the deceased met her death from an overdose of poison, and there was no evidence whatever that it was negligently administered. The defendant was guilty of murder in the first degree, or he was not guilty. It is not error to omit to instruct as to a degree or degrees of crime of which the jury could not, under the evidence, have found the defendant guilty. *State v. Cole*, 63 Iowa, 695; *State v. Mahan*, 68 Iowa, 305; *State v. Cater*, 100 Iowa, 501.

In the sixth instruction the court said, in substance, that if defendant did administer poison to his wife, and she partook of the same, and from the effects thereof died, all the elements of the crime are proven. It is said that, under this instruction, the defendant might be convicted even if he gave it as a medicine, or for the good of the wife. This is no doubt true, but, as applied to the facts of the case, it was not erroneous, for the reason that there was not a scintilla of evidence tending to show that he did so administer the poison. If he gave it at all, he gave it for an unlawful purpose. We have seen in the first paragraph of this opinion, that if it was so given, and death results, the crime is murder of the first degree.

This was a part of the seventh instruction: "You have heard the testimony as to the autopsy held upon her body, and the removal of certain organs therefrom, and touching the chemical analysis of such organs by Prof. Haines, and the result of such chemical analysis as to finding strychnine in said organs, and the quantity there found." Continuing, the court said that medical experts had been permitted to give their opinions, based in part upon the result of the chemical analysis of the organs examined, and that their opinions were proper to be considered; that the opinions were based upon the assumption that the facts recited in the hypothetical questions were true; but the court further said that whether or not the conditions so stated were true was for the determination of the jury. The jury were also instructed in this same connection that they should give the most careful consideration to all the evidence bearing upon the facts involved in the hypothetical questions, and as to the opinions of witnesses founded thereon, and that it was for them to decide whether Mrs. Van Tassel's death was caused by strychnine poisoning. The part of the instruction quoted is said to be erroneous, because it assumes the existence of certain facts with reference to the analysis of certain organs taken from the body of the deceased. We do not think the instruction, taken as a whole, is subject to this objection. The court merely directed the attention of the jury to the subject-matter of certain testimony for the purpose of enlightening them as to the object of its introduction. That there was evidence with reference to such matters is conceded, and the court simply tells the jury how they may consider it in arriving at their verdict. There is no assumption in the instruction that the testimony was sufficient to prove any fact at issue. A careful reading of the instruction clearly

demonstrates that there was no assumption of any fact in the part of the instruction criticised.

VIII. One of the main witnesses for the state was a detective employed by the county authorities to assist in ferreting out the crime. The defendant asked an instruction to the effect that, if he employed falsehood, artifice, and fraud in trying to obtain the alleged confession from defendant, it very seriously affected his credibility as to whether such confession was obtained or not. In lieu thereof, the court said to the jury that they had the right to consider the means employed by the detective to elicit statements from defendant, whether or not the detective used deception and falsehood on his part to induce the defendant to make the same, as well as a great many other circumstances which are enumerated in the instruction, in determining the weight to be given to the evidence of this witness. The court also said that the jury had the right to know just what arts were employed, and all the circumstances under which the confession was made; and in the light of these circumstances, and in connection with defendant's evidence, they should determine the facts in regard to the purported confession. The instructions given were clearly correct, and it was not erroneous to refuse the one asked by defendant. *State v. Hoxsie*, 15 R. I. 4 (22 Atl. Rep. 1059); *Commonwealth v. Mason*, 135 Mass. 555; *Commonwealth v. Trainor*, 123 Mass. 414; *State v. McKeon*, 36 Iowa, 343.

Complaint is made of the instructions 11 and 12. Eleven relates to the alleged confession, and says that if it was obtained with the view that defendant should be accepted as an accomplice in the commission of a proposed crime, and to demonstrate to the detective that defendant was capable of committing crime, it was voluntary. Certainly, this a correct statement of the law.

Instruction 4 asked by defendant, relating to the weight to be given the confession, was covered by other parts of the charge.

Instruction 12 relates to the testimony of experts as to handwriting, and directs the jury that such evidence is far from satisfactory, and should be received with great care and caution. This was certainly correct, and it embodied the substance of the charge asked by defendant with reference to the same subject.

The jury were instructed that they might consider the testimony given by defendant before the coroner's jury for impeaching purposes, and for that alone. In argument it is said that it was inadmissible for any purpose, because obtained by duress. We have already seen that the evidence was admissible. The instruction was really favorable to defendant, and he has no cause of complaint.

The instruction as to motive or the want of it, and its effect upon the case, is complained of. We need not set it out, as it is a clear and correct statement of the law.

The instruction as to the weight of the evidence required in such cases used these words: "If, after a careful comparison of the evidence and a full consideration of the whole case, your minds are brought to an abiding conviction beyond a reasonable doubt ' etc. It is said that the instruction is faulty because it fails to use the words "to a moral certainty" This criticism is captious. When the mind is brought to an abiding conviction beyond a reasonable doubt that a thing exists, it is a "moral certainty." *Commonwealth v. Costley*, 118 Mass. 23.

A question in the case was whether Mrs. Van Tassel, the wife of defendant, was murdered or committed suicide. With reference to this matter, the court

directed the jury to carefully consider the health of the deceased, her mental traits, and condition prior to her death, and further said that "such evidence should not be permitted to obscure the well-proven facts, nor lead you to indulge in fanciful suppositions or suspicions." It is said that this instruction clearly intimates that all the state's evidence consists of "well-proven facts." We do not so understand it. There is no intimation that the court regarded any particular facts as "well proven." The last part of the instruction is certainly correct when construed with the other instructions relating to reasonable doubt, and as to what the state must prove in order to secure a conviction.

A careful examination of all of the instructions convinces us that there was no prejudicial error. On the contrary, they clearly and accurately state the law as applied to the facts shown in evidence, and were a complete and authentic guide to the jury in arriving at their verdict.

IX. Lastly, it is insisted that the verdict is without support in the evidence. That the deceased came to her death by strychnine poisoining, administered at different times, is clearly shown by the evidence; and that defendant purchased and had in his possession large quantities of this deadly drug at or about the time the deceased came to her death, conclusively appears. It also appears that defendant, at the time his wife was suffering from the effects of the drug, denied that he had any poison, and that there was any poison about the premises. There is considerable evidence to the effect that defendant substituted some kind of a drug in place of one left by the doctor to be given Mrs. Van Tassel, to cure her of the effects of poison previously taken by her. There is also evidence that defendant showed no signs of grief when his wife died, and that shortly

after her death he went into her room, and removed something from some of the furniture therein.    There is further evidence to the effect that he objected to an inquest being held upon the body of his wife, and, after the death of his wife, denied having purchased any poison before her death.    There is also some evidence to the effect that he was in love with his wife's sister, and that a very short time after the death of his wife he proposed marriage to this sister.    In addition to this, the jury may well have found that the defendant confessed his crime to the detective of whom we have spoken in other parts of this opinion, both orally and by a solemn written confession, made to induce the detective to believe that defendant was low and base enough to enter into a criminal conspiracy to wrong and defraud.    The proof of the *corpus delicti* was ample, and the confession made to the detective, if believed, was sufficient in itself to justify the conviction.    There are, it is true, some things which cast suspicion upon the testimony given by this detective; but, on the other hand, there are some physical facts which tend to support him.    The weight of his evidence was for the jury; and as he was before them, and was subject to a most rigid and searching cross-examination, they were better situated than we to determine his credibility.    Discarding all of his evidence, however we think enough remains to show that defendant is guilty of the crime with which he is charged.    In addition to some of the circumstances to which we have referred, we find that his testimony before the coroner's jury and his evidence given upon the trial are contradictory and conflicting.    The evidence is conflicting, but there is ample, if credited by the jury, to justify the verdict.    There is also evidence tending to show that the deceased committed suicide, but much of this is contradicted, and, on the whole,

we think that it shows that Ora Van Tassel was in love with life, and had no desire to take it by her own hand: She was, it is true, somewhat nervous and excitable, due no doubt to overwork in school during her girlhood days, but everything pointed to a desire on her part to live. She was interested in, and was planning for, the future, which promised a new life for her in a few months. And, while the evidence of motive is not strong, yet it frequently happens that crime is committed for which there is no apparent motive.

We have carefully examined the whole record, not only because of the importance of the case, but by reason of the fact that the crime charged was and is unnatural, and of the further fact that conviction was had largely upon the evidence of a detective whose methods are not to be commended. This examination convinces us that there was no prejudical error, and the judgment is therefore AFFIRMED.