No. 25,747.

Ray D. Luzadder, *Appellee,* v. C. E. Hale and The Hill-Howard Motor Co., *Appellants.*

#### SYLLABUS BY THE COURT.

Estoppel—*Clothing Another With Apparent Title—Innocent Mortgagee.* A purchased an automobile in his own name with money furnished by B. B permitted A to have possession of the automobile, with all *indicia* of title indicating absolute ownership in A. *Held,* B was estopped from denying A's authority to mortgage the automobile to C, who acted in good faith upon A's possession and *indicia* of title.

Appeal from Sedgwick district court, division No. 1; Thomas E. Elcock, judge. Opinion filed March 7, 1925. Affirmed.

*K. W. Pringle,* of Wichita, *W. L. Cunningham,* and *D. Arthur Walker,* both of Arkansas City, for the appellants.

*John B. Bryant,* of Wichita, for the appellee.

The opinion of the court was delivered by

Harvey, J.: Ray D. Luzadder brought an action in replevin against C. E. Hale and wife and the Hill-Howard Motor Company for the possession of a Velie automobile in which the plaintiff claimed a special ownership by reason of a chattel mortgage on the automobile executed by C. E. Hale and wife. The petition alleged that

Hale was the owner and in possession of the automobile at the time the mortgage was given, and other usual allegations in such an action. The answer of the Hill-Howard Motor Company was a general denial. At the time of filing the action the automobile was in possession of the Hill-Howard Motor Company at Arkansas City, and they gave a redelivery bond.

The trial was begun before a jury. After several witnesses were examined, their testimony being conflicting, the court, after consulting with the attorneys and in order to simplify the issues, dictated an agreed statement of facts, which was accepted by all the parties to the action, and upon which he directed a verdict for plaintiff. The defendant, the Hill-Howard Motor Company, has appealed. The statement dictated is as follows:

"The Court: For the purpose of simplifying the issues herein joined and presenting the sole question involved by this lawsuit, it is agreed by and between the parties as follows: That the Hill-Howard Motor Company of Arkansas City were the owners of a certain Cole Eight automobile; that they placed said Cole Eight in the possession of one of their employees, to wit, C. E. Hale, a defendant in this case, for the purpose of making a deal therewith, subject to their approval; that pursuant to said authority, said Hale came to Wichita with the Cole Eight car and entered into negotiations with the Smith-Dyson Motor Company of Wichita, Kan., for the trade of the Cole Eight car for a Velie automobile, and $725 cash. That said deal was submitted by C. E. Hale to the Hill-Howard Motor Company, who authorized the making of such deal; that thereupon said Hale came and made the trade in question with the Smith-Dyson Motor Company, whereby the Cole Eight car was traded for the Velie car in suit and $725 cash, which was handled as follows: Hale drew a check, signed by him, on the Home State Bank of Arkansas City, in which he had no funds on deposit, and gave it as part payment for the Velie motor car. This check was paid by the Hill-Howard Motor Company. Hale also gave his vendor's lien note for $225 for the balance of the purchase price. This note was paid by the giving of two checks, which were handled the same as the $500 check. That the last of the cash consideration for the motor car in question was paid on May 14, 1923, by check as aforesaid. That at the time Hale dealt with the Smith-Dyson Company, the Smith-Dyson Company believed that they were dealing with Hale individually, and that the Hill-Howard Motor Company knew that Hale was making the deal and did not notify the Smith-Dyson Company that the deal was being made for them or on their behalf. That after said deal was made and the automobile delivered by the Smith-Dyson Motor Company to Hale, it was taken to Arkansas City and turned over to the possession of the Hill-Howard Motor Company, remaining in their possession some days, and was also in their possession for some days at one subsequent occasion prior to the date of the mortgage herein sued on. That on June 2, 1923, they gave Hale permission to take said car for the purpose of making other deals for the sale or trade of

same, subject to their approval. That no express authority was given Hale to mortgage said car at any time by the Hill-Howard Motor Company. That Hale then took the car and came to Wichita, Kan., with it and that while in Wichita, Kan., he mortgaged said car to the plaintiff, which is the note and mortgage in suit on which this action is founded.

"Mr. Bryant (attorney for plaintiff): That is all right. I would like to add one thing here; that is, that at the time Hale mortgaged this car to Luzadder, he informed Luzadder that he had purchased the car from the Smith-Dyson Motor people, and Luzadder called the Smith-Dyson Motor people and asked them about this particular car, and they informed him that they had sold the car as a dealer to C. E. Hale.

"The Court: That at the time of the execution of the note and mortgage in question the car was in the possession of C. E. Hale. It is conceded that the property in question, at the time of the institution of this action, was of greater value than the amount of plaintiff's claim under his note and chattel mortgage. It is further admitted that the note in question was for $247.50, due July 5, 1923, bearing interest at 10 per cent from maturity, and the following payments have been made thereon by C. E. Hale: August 8, 1923, $45; September 21, 1923, $20; October 22, 1923, $23. It is agreed between the parties that the balance of the plaintiff's debt on this date (March 21, 1924) is $172.50."

Hale and wife were residents of Sedgwick county, and the mortgage was given June 5, 1923.

Appellant argues that since it is agreed the Hill-Howard Motor Company owned the Velie automobile, and Hale was given possession of it by the motor company as its agent, with limited authority to sell or exchange it, subject to the approval of the motor company; that Hale had no such title in the automobile as would make it possible for him to mortgage it to secure his private debt, and that such a mortgage is void, citing *Switzer v. Wilvers*, 24 Kan. 384; 2 C. J. 650, and cases there cited. Appellee does not seriously controvert this principle of law, but contends that under the facts in this case appellant is estopped from denying Hale's title in the automobile and his authority to mortgage it. This is the real question to be decided here.

Williston on Sales, 2d ed., § 316, states the rule thus:

"Sometimes the owner of goods not only intrusts the possession of goods to another, but either makes or allows to be made written or oral statements inconsistent with any other supposition than that the possessor is the owner. Cases illustrating this are very various in their facts, and as illustrations some of the leading cases may be briefly stated. . . . Where a purchaser of goods allowed a bill of sale for the goods to be made out in the name of his agent, who was also intrusted with the possession of the goods, the principal was held estopped to claim the goods against a purchaser from the agent.

. . . It should be noticed that it is not simply the *indicia* of title in these cases which is important, but possession coupled with the *indicia* of title."

In *First Nat. Bank of Holdenville v. Kissare,* 22 Okla. 545, it was held:

"Where, in an action of replevin brought by K for certain cattle taken by defendant in foreclosure of a chattel mortgage as the property of B, the evidence disclosed that K, the owner of said cattle, while living in another state, branded them in B's brand and sent them into what is now this state, to be by him pastured for hire, and that while so in his possession were mortgaged to defendant by B as his property to secure a loan to B., *held,* that K. is estopped to set up title to the property as against the defendant." (Syl.)

And in the opinion it was said:

"To the general rule that a vendor or mortgagor can convey no better title than he has, there is a well-defined exception, which is that where the owner of property clothes another with *indicia* of title or allows him to appear as owner thereof, or as having full power of disposition over the same, an innocent third party thus led into dealing with such apparent owner with reference thereto will be protected. . . . It is a well-known fact that cattle bearing a brand are by the business world taken to be the property of the owner of the brand. By thus branding them, Kissare not only proclaimed to the world Butler's ownership in the cattle as effectually as he could have done by any other means, but just as effectually disclaimed ownership in them himself." (pp. 547, 548.)

In *Nixon v. Brown,* 57 N. H. 34, it was held:

"The plaintiff employed one M to buy a horse for him. M bought the horse, paying for it with the plaintiff's money, and took a bill of sale in his own name. Afterwards he informed the plaintiff of what he had done, and showed him the bill of sale; but the plaintiff permitted him to go away with the horse and bill of sale still in his possession. M thereupon went to the defendant, who had no knowledge of the agency, showed him the bill of sale, sold him the horse for cash, and absconded. *Held,* that the plaintiff could not recover in an action of trover for the horse." (Syl.)

In *McMurray v. Hughes,* 82 Iowa 47, the syllabus reads:

"A racehorse was purchased jointly by M and H, at Lexington, Ky., but a bill of sale therefor was executed to H alone as vendee, and the evidence tended to show that it was the intention of M at the time to keep his interest in the horse secret. Subsequently the horse was sent to Gainesville, Tex., where both M and H resided, and was there kept in a barn at the race track, where H, who was a 'driver and campaigner of horses,' took charge of the horse, and paid the expenses incident to feeding, caring for and training him. M frequently visited the barn, but while showing much interest in the horse, did not disclose his ownership, and the 'rubber' in charge did not know of it. Afterwards H took the horse, with the consent of M, to Keokuk, Iowa, where he sold him to the defendant. The latter did not see the bill of sale received

by H at Lexington, it having been lost, but was informed by another at Keo-kuk that it had been seen by him. Before leaving Gainesville, H had made a bill of sale to M, but this had not been acknowledged and recorded, and the defendant had no actual notice of the interest of M in the property. *Held,* that M was estopped by his conduct from asserting any title to the horse as against the defendant." (See, also, *Commercial Bank v. Armsby Co.,* 120 Ga. 74; *O'Connor, Adm'x, v. Clark, Appellant,* 170 Pa. 318; 21 C. J. 1172-1179, and cases there cited.)

Applying the above authorities to the case before us, it will be noted that the sale of the Velie was made by the Smith-Dyson Motor Company to Hale, who paid for it by his check, who executed a ven-dor's-lien note on the car, which he later paid with his check. In the oral argument in this court it was stated, without being contro-verted, that a bill of sale was made to Hale as purchaser of the car, but this is not in the agreed statement of facts as dictated. It is clear, however, from the statement that the sale was made to Hale, and all papers that were executed pertaining to the sale were made to or by Hale as the sole purchaser. For some reason the Hill-Howard Motor Company did not disclose its interest in the transac-tion. No effort to comply with the statutes (R. S. 8-108, 8-117, 8-118) relating to the sale or transfer of automobiles between persons not dealers is disclosed by the record. The Hill-Howard Motor Company permitted the record of the sale to stand as though Hale were the purchaser, and also permitted him to have possession of the car, and together this gave Hale the appearance of being the abso-lute owner of the car, with authority to sell, mortgage or otherwise dispose of or encumber it. Relying upon this, and upon all the in-formation he could obtain from Hale, who represented himself to be the owner and so stated in the mortgage which he executed, and all the information he could get from the Smith-Dyson Motor Com-pany, who informed him they had sold the car to Hale, the plaintiff made Hale a loan and took a mortgage on the car. In this situation defendant is estopped from denying Hale's authority to mortgage the car to plaintiff. Appellant argues that plaintiff should have inquired of the state automobile license department and learned in whose name the car was licensed, but the record does not show what the answer would have been; it may have been licensed in the name of Hale, hence this argument avails appellant nothing.

The record indicates that Hale's conduct in giving plaintiff a mortgage upon the car was wrongful both to plaintiff and to appel-lant. In such a circumstance the burden of the wrongdoing must fall

upon him who, through design or neglect, made such a wrong possible. In this case that must be the appellant, for, by design or neglect, it gave Hale possession with the *indicia* of ownership, and plaintiff, relying thereon, and in good faith, made the loan and took the mortgage.

The judgment of the court below is affirmed.