No. 32,530

CHARLES NELSON, *Appellant,* v. GLEN LEWIS, CHARLEY CARSON and WALTER HOOVER, *Appellees.*

(53 P. 2d 813)

Opinion filed January 25, 1936.

*E. D. Mikesell,* of Fredonia, for the appellant.

*G. H. Lamb, W. E. Hogueland* and *E. E. Lamb,* all of Yates Center, for appellees Glen Lewis and Charley Carson.

The opinion of the court was delivered by

BURCH, C. J.: The action was one by Charles Nelson against Glen Lewis, Charley Carson and Walter Hoover for damages for conversion of a span of mules belonging to plaintiff. Lewis and Carson demurred to plaintiff's evidence. The demurrers were sustained, and plaintiff appeals.

One of the mules was mortgaged. Plaintiff needed money to pay the mortgage, and desired to sell the span. On Friday, January 19, 1934, R. E. Childers, a mule buyer who lived in Chanute, went to plaintiff's farm, southwest of Fredonia, and talked with plaintiff about buying the mules. Childers was a stranger to plaintiff. Price was discussed, and Childers' offer of $240 was accepted. Plaintiff said he had to have the money. Childers said he had the money in the First National Bank of Chanute and would give plaintiff a check. Childers wrote a check for the price of the mules, and plaintiff accepted the check. Childers said he wanted the mules immediately, and would send a truck for them. Then Childers went away. Plaintiff was plowing with the mules at the time. He unhitched them, and soon afterward Roy Criswell, who was engaged in the trucking business, came for the mules. Criswell was employed by Childers. Criswell asked plaintiff who the buyer was and plaintiff looked at the check to get the name. Plaintiff helped Criswell load the mules in Criswell's truck and Criswell took them away. Criswell took the mules to a sale barn in Fredonia. Childers was waiting at the barn for Criswell and reëmployed Criswell to take the mules to Yates Center. At Yates Center, Criswell unloaded the mules at the stockyards. Defendant Glen Lewis purchased the mules of Childers for $230, shipped them by truck from Yates Center to Kansas City, Mo., and sold them for $250.

Walter Hoover accompanied Childers to plaintiff's farm and was present when Childers gave his check to plaintiff. Childers misrepresented his place of residence, misrepresented his business, and misrepresented the purpose for which he was buying the mules. Hoover corroborated Childers' statements and told plaintiff Childers was all right. This assurance induced plaintiff to accept the check and to deliver the mules.

The next day plaintiff deposited the check in the Citizens Bank of Fredonia. When the check was presented to the First National Bank of Chanute for payment, payment was refused, and in due

time the check was returned to the Citizens Bank of Fredonia, marked "No Funds." Childers absconded, and a warrant issued for his arrest in a prosecution under the bad-check law has not been served.

The action against Lewis for conversion is predicated on the proposition that because of Childers' fraud in obtaining the mules, title did not pass from Nelson to Childers. Such is not the law.

In the bargaining between Nelson and Childers, Nelson wanted $250 for the mules. He consented to take $240. Nelson said he wanted money. He consented to take Childers' check. Nelson delivered the mules unconditionally to Childers. The intention on one side was to sell, and on the other side to buy, and there can be no dispute that a sale to Childers was consummated.

The law is stated in 2 Williston on Sales (2d ed.), section 625a:

"It is important to observe whether the fraudulent person induces the defrauded person to assent to a transfer of title or merely to assent to a transfer of possession. In the latter case the fraudulent person can transfer no better title even to a bona fide purchaser for value without notice than any possessor of goods without title."

In support of this text the author quotes in a footnote from the opinion in *Levy v. Cooke,* 143 Pa. St. 607, 614, as follows:

"If the owner intended to transfer the property in the goods, as well as their possession, the transaction is a sale, and the property passes, however fraudulent the device may have been; but if he intended to part with nothing more than the bare possession, there is no sale and no property passes. In the former case the contract is not void *ab initio,* but voidable at the election of the vendor. Such voidable contracts may be affirmed and enforced, or they may be rescinded by the vendor at his election; but in the meantime, and until he does elect, if his vendee transfers the goods, in whole or in part, to an innocent third person for a valuable consideration, the right of the original vendor will be subordinate to that of such innocent third person."

Plaintiff cites no textbook, and cites no decision outside this state, to support his proposition, and relies solely on certain decisions of this court as warranting recovery. None of them does so.

In the case of *Motor Co. v. Insurance Co.,* 111 Kan. 225, 207 Pac. 205, a swindler carried papers which indicated he was Ben Cole. He gave a check signed "Ben Cole" on Ben Cole's bank to pay for an automobile. On inquiry, the bank reported Ben Cole's account was good for the amount of the check. The check was accepted by the motor company, the automobile was delivered, and the swindler vanished. The action was on an insurance policy, insuring against

theft. No innocent purchaser from the swindler was involved. For the purpose of the decision it was held the swindler obtained possession of the automobile by a species of theft. This was true, even though the motor company intended to part with title and possession. The decision was approved in the case of *Tripp v. United States Fire Ins. Co.*, 141 Kan. 897, 44 P. 2d 236, but in that case the swindler did not so much as obtain possession of an automobile. He obtained custody only.

In the case of *Leslie v. Milling Co.*, 109 Kan. 146, 197 Pac. 1094, Gibson wrongfully took wheat from Leslie's granary and sold it to the milling company. Leslie voluntarily parted with neither title nor possession. In fact, the wheat was stolen. Gibson could transfer neither title nor right of possession to the milling company.

In the case of *Farmers Grain Co. v. Atchison, T. & S. F. Rly. Co.*, 120 Kan. 21, 245 Pac. 734, a shipper delivered wheat to the railroad company for transportation pursuant to a shipper's order bill of lading. The railroad company delivered the wheat without presentation of the bill of lading, and the wheat passed through several hands, finally reaching a milling company. The railroad company was a bailee only, and could not vest title or right of possession in anybody by wrongful delivery. In the same case, on rehearing, *Farmers Grain Co. v. Atchison, T. & S. F. Rly. Co.*, 121 Kan. 10, 245 Pac. 734, it was held the fact that the milling company was an innocent purchaser for value was immaterial. In the opinion it was said:

"It is well settled that one who obtains the possession of property without the consent of the owner, or who buys it from a party who has no ownership or right to sell or dispose of it and thereafter asserts dominion over it or appropriates it to his own use, is liable for conversion, although he acted in good faith in the belief that the seller or party from whom he obtained possession owned the property and had the right to dispose of it." (p. 11.)

In a reply brief, plaintiff attempts to shift from his position that title did not pass, and contends Lewis was not an innocent purchaser for value. Lewis paid practically full value for the mules, and there was no substantial evidence that he had knowledge of any fact putting him on inquiry respecting the source of Childers' title.

Carson had nothing to do with the original sale or with subsequent disposition of the mules.

The judgment of the district court is affirmed.