No. 42,373

ROBERT E. LOUIS and ROY ELDRIDGE, Co-partners, doing business as LOUIS-ELDRIDGE CATTLE COMPANY, *Appellees*, v. BILL McMINN, *Appellant*.

(369 P. 2d 221)

Opinion filed March 3, 1962.

*H. W. Fanning*, of Wichita, argued the cause, and *W. A. Kahrs, Robert H. Nelson* and *Richard C. Hite*, all of Wichita, were with him on the brief for the appellant.

*Morris Moon*, of Augusta, and *Marvin R. Appling*, of Wichita, argued the cause, and *Eli Eubanks, Charles D. Anderson* and *Donald B. Clark*, all of Wichita, were with him on the brief for the appellees.

The opinion of the court was delivered by

PRICE, J.: This was a replevin action brought for the recovery of cattle. Judgment was for plaintiffs and defendant has appealed.

Highly summarized, the background of the matter is this:

In the fall of 1959, and for some time prior thereto, plaintiffs were a partnership engaged in the buying, selling and trading of cattle and other livestock in the Wichita area. On several occasions one Cunningham had attempted to purchase some cattle from them, purportedly for his brother in Oklahoma. On October 8, 1959, Cunningham and plaintiffs went to a farm near Augusta, at which place Cunningham culled forty-eight head of cattle from a large herd owned by plaintiffs. The forty-eight head were then taken to Douglass where they were weighed and priced from thirty to thirty-two cents per pound. They were then trucked to plaintiffs' pasture where they were combined with twenty-nine head already located in a pasture near where Cunningham lived. Cunningham was given a piece of paper upon which were marked the weights and sale price of the seventy-seven head, and it also contained the words "Sold to Cunningham." The total sale price was $9,571.90.

On October 14th Cunningham gave to plaintiffs his check drawn on an Oklahoma City bank for the above amount. On the same date plaintiffs gave Cunningham their check drawn on a Wichita bank in the amount of $275.15, which was marked "Commission on 77 head cattle." This check was given to Cunningham at his request so that he could show it to his brother in Oklahoma. At the trial plaintiffs testified that this check was given for the purchase of feed.

In the meantime Cunningham had approached the defendant McMinn, an experienced cattle buyer and trader in the area, and offered to sell him some cattle. At first defendant appeared uninterested. Finally, on October 16th, after considerable negotiating, Cunningham and defendant went to look at the seventy-seven head of cattle which were still in plaintiff's pasture where they had been taken on October 8th. Defendant was shown the weight tickets and sale price which plaintiffs had given to Cunningham, and they struck a bargain whereby defendant purchased the cattle for $6,000 cash and four head of ponies. This sale figured out on the basis of approximately twenty-one cents per pound. Defendant went to his bank, borrowed money and received a cashier's check in the amount of $6,000, which he turned over to Cunningham. On Sunday, October 18th, defendant went to the pasture where the cattle were located and drove them approximately three miles to his own pasture.

On October 20th a deputy sheriff went to defendant's farm and advised him there was some "trouble" concerning the cattle. A

few minutes later the plaintiffs arrived and a discussion was had concerning the events that had occurred in connection with the cattle. They asked defendant to stop payment on his check, but he advised them that the check he had given to Cunningham was not his own but a cashier's check. In the meantime, the check on the Oklahoma City bank given by Cunningham to plaintiffs, and which had been held by them for several days, was found to be worthless, and plaintiffs had gone to the county attorney about the matter. As a result, a warrant was issued for Cunningham charging fraud and the issuance of a bad check.

In the meantime, Cunningham had "departed for parts unknown." This replevin action was filed on October 23rd.

After hearing considerable evidence the trial court rendered judgment in favor of plaintiffs and in doing so made findings of fact. Finding No. 2 was that plaintiffs and defendant had been engaged in the buying and selling of cattle in the area for some years and were acquainted with the fair and reasonable market value of cattle during October, 1959. Finding No. 6 was that the fair and reasonable market value of the cattle in question on October 8th and October 16th was between twenty-eight and thirty-two cents per pound. Findings Nos. 7 and 8 were:

"On October 16th, 1959, Cunningham sold the cattle to defendant McMinn for approximately twenty-one cents per pound which amount McMinn knew was well below the market, and sufficiently so as to put him on inquiry and investigation of Cunningham's title to the cattle."

"The cattle had been fed and pastured by plaintiffs who held possession of them until they were removed by defendant McMinn on October 18, 1959, without the knowledge of the plaintiffs."

The court concluded that there was no payment to plaintiffs and that title vested in them at the time the action was filed, and entered judgment accordingly. His post-trial motions being overruled, defendant has appealed.

Defendant's contentions are based upon three propositions— (1) title to the cattle was not vested in plaintiffs at the time the action was commenced; (2) plaintiffs, as vendors, are estopped from claiming title to the cattle sold by their fraudulent vendee to defendant, a *bona fide* purchaser, and (3) when two persons are equally innocent in their transactions with a fraudulent third person, and one of them must stand a loss as a result of the fraud, equity will not permit the one to recover who started the chain of events that resulted in the loss and who had at hand the means of

protection but failed to avail himself of them. (*Grain Co. v. Harbour,* 89 Kan. 824, 133 Pac. 565, 47 LRA (NS) 173; *Luzadder v. Hale,* 118 Kan. 85, 233 Pac. 1046; *Nelson v. Lewis,* 143 Kan. 106, 53 P. 2d 813.)

There appears to be very little dispute between the parties as to the rules of law applicable to situations of this nature—but they are in sharp dispute as to the correctness of some of the trial court's findings—particularly finding No. 7, above—and the conclusion based thereon.

It is clear that inherent in each of the three contentions made by defendant is the proposition that the facts established him to be a *bona fide* purchaser of the cattle—that is, *an innocent third party.* The trouble, from his standpoint, is that upon disputed evidence the trial court found *otherwise* on that pivotal question, and after a careful examination of the record we are unable to say such finding is unsupported by the evidence. We therefore are bound by it. Had the trial court found otherwise on that point the many decisions relied on by defendant would be applicable and perhaps would compel a different result. Concededly, there are some "close" questions in this case, but in view of the trial court's findings the judgment, which is supported by them, must be affirmed.